CROOKSHANK v. HENRY VROOM & SON, INC.

1. Automobiles — Bicycles — Negligence — Contributory Negligence.

In action by 15-year old bicyclist against owner of truck and semi-trailer, 30 feet in length, which overtook bicyclist riding between it and cars parked near curb and started to make a right turn into a street when bicycle collided with rear portion as it swung over toward curb, issues of negligence of truck driver and contributory negligence of plaintiff who was carrying a younger brother between the handlebars and seat *held*, for jury.

2. Same—Truck and Semi-Trailer—Right Turn—Instructions—Proximate Cause—Negligence—Bicycles.

In action by 15-year old bicyclist for injuries sustained in collision with rear portion of 30-foot truck and semi-trailer as it swung over to the curb in making right turn at a street intersection after having overtaken bicyclist and stopped, instruction from which jury was led to believe it was negli-

gence *per se* for truck driver to fail to make signal of inten-
tion to turn right *held,* erroneous and prejudicial, where driver
was up high and on left side of truck cab, and bicyclist could
not have seen signal had it been given, such failure not being
the proximate cause of the accident (1 Comp. Laws 1929,
§ 4711).

Appeal from Wayne; Cotter (Thomas M.), J., pre-
siding. Submitted October 8, 1936. (Docket No. 56,
Calendar No. 39,130.) Decided December 8, 1936.

Case by Albert Crookshank, by his next friend,
Cleo Smith, against Henry Vroom & Son, Inc., a
corporation, for personal injuries sustained, while
riding a bicycle, in an accident with a truck. Verdict
and judgment for plaintiff. Defendant appeals.
Reversed and new trial ordered.

*Dennis H. Dwyer* and *William J. Donovan,* for
plaintiff.

*Vandeveer & Vandeveer (Thomas L. Lott,* of
counsel), for defendant.

BUTZEL, J. On the afternoon of September 13,
1935, plaintiff, a 15-year old boy, rode his bicycle
down Vermont avenue, a street running north and
south in the city of Detroit, Michigan. He was
accompanied by his young brother, not yet three
years of age, whom he seated on the top bar and held
between the handlebars and the seat. On reaching
Vernor highway, a very wide thoroughfare running
east and west, he saw defendant's truck approaching
thereon in a westerly direction. Plaintiff turned
toward the west propelling his bicycle at the rate of
from 6 to 8 miles an hour. The truck, consisting
of a tractor, semi-trailer and an overlapping
coupling, had a length of approximately 30 feet.
It was proceeding at the rate of 15 miles per hour,

the driver intending to drive north on Wabash avenue, which also runs north and south, and is one block west of Vermont avenue. The driver of the truck testified that as he drove along Vernor highway, he remained from 10 to 12 feet south of the northerly curb, that he passed plaintiff who was riding about 6 or 7 feet south of the northerly curb; that an alley runs through the middle of the block between Vermont and Wabash avenues to Vernor highway and that there were a few automobiles parked between the alley and Wabash avenue; that plaintiff rode his bicycle about 2 feet to the south or left of these cars; that he drove the truck from 4 to 6 feet to the left of plaintiff; that the speed of the truck was slowed down to approximately 4 miles an hour when it arrived at about 50 feet from the corner of Vernor highway and Wabash avenue, at which time the truck was about 10 feet from the curb; that he brought the truck to a stop before making the turn; that in order to make the turn, it was necessary to keep the truck some distance from the right curb so that the rear right wheel of the trailer would not run over the corner of the curb; that the truck arrived at the easterly curb of Wabash avenue before plaintiff had proceeded that far; that he first became aware of the accident when he heard plaintiff's outcry and that he brought the truck to an immediate stop. He stated, however, that he knew that in making the turn into Wabash avenue, the boy would also be compelled to make a similar turn.

Plaintiff testified that he could stop his bicycle within a foot or two and that when he was 40 feet from Wabash avenue he saw the truck make the turn. On further examination, however, he changed or corrected his testimony and finally stated that the truck was just 10 feet ahead of him when it turned onto Wabash avenue; that he immediately threw his

younger brother off the bicycle onto the grass between the sidewalk and the curb, but before he could stop the bicycle the rear end of the truck swung over to the curb against the bicycle, partly crushing the bicycle, with plaintiff under it, and causing him serious injuries. Plaintiff further testified that when the truck made the turn it was only 10 feet from the point at which he had arrived with his bicycle; that he found himself in a position of peril, and with an emergency thus arising, and the necessity of saving his little brother from a dangerous situation, he could not stop his bicycle in time to avoid being struck. The boy further stated that when the front part of the truck reached the corner, he was opposite the mid-section of the truck.

Other testimony showed that the truck turned when the boy was about 12 feet from Wabash avenue and that he was just 5 feet from the corner when he put the little boy off the bicycle; that the driver gave no signal of his intention to turn; that the truck was proceeding at the rate of 15 miles per hour and that it suddenly turned to the right to go north on Wabash avenue.

Defendant claims that the accident was due to the fault of the boy who should have stopped his bicycle and that the boy's own testimony as first given showed that he had more than ample time in which to alight from his bicycle as he could have stopped it within a foot or two.

There was sufficient testimony introduced so that the questions of the negligence of defendant and the contributory negligence of plaintiff became issues of fact for the jury.

Defendant's driver was asked whether he gave any signal with his arm or any mechanical device when he turned into Wabash avenue. Evidence showed that he was seated on the left side of the

comparatively high cab of the truck and had he given a signal, it could not have been seen by the boy. The attorney for the defendant objected to the question on the ground that it would have been a physical impossibility for the boy to see the signal had one been given. The objection was overruled. At the close of the driver's testimony, a juror inquired as to what the driver had testified in regard to the giving of the signal. This indicated that the jury must have been impressed with the import of the question. Defendant requested the judge to charge that the failure of the driver to give the signal in violation of the statute did not contribute to the accident and was not the proximate or contributing cause therefor. The judge refused to grant the request, but read the following statutes:

"1 Comp. Laws, 1929, § 4706. Sec. 14. Overtaking a vehicle. (a) The driver of any vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof, and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle.

"4710. Sec. 18. Turning at intersections.

"(a) Except as otherwise provided in this section, the driver of a vehicle intending to turn to the right at an intersection shall approach such intersection in the lane for traffic nearest to the righthand side of the highway, and in turning shall keep as closely as practicable to the righthand curb or edge of the highway.

"4711. Sec. 19. Signals on starting, stopping or turning.

"(a) The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety and shall give a signal as required in this section.

"(b) The signal herein required shall be given either by means of the hand and arm in the manner

herein specified, or by a mechanical or electrical signal device which conveys an intelligible signal or warning to another driver approaching from the rear.''

He thereupon made further statements as follows:

''I charge you that it is negligent to operate an automobile in violation of said statute.

''I charge you further that if you find that the driver of the said truck and trailer did not give the warning as provided for by the statute law and did not make a right turn into Wabash avenue in the manner provided for by the statute law, then he is guilty of negligence.

''I charge you further, members of the jury, if you should find from the greater weight of the evidence, that the defendant's truck was being driven west on west Vernor highway, and that, before it reached the corner of Wabash avenue, the motor truck passed the plaintiff, Albert Crookshank, riding on his bicycle on the right side of the truck three or four feet from the north curb, and you further find that it suddenly turned to the north without giving any notice or signal as required by statute, that this would be negligence. If, however, it is apparent that such violation could have no influence in causing the injury, the jury has no right to consider it.

''In this connection, I charge you that the plaintiff was not required to anticipate that the defendant's driver was going to violate the statute by turning north into Wabash avenue without giving proper warning or signal.   *   *   *

''I further charge you that a bicyclist need not anticipate that a truck driver will fail to signal an intention to turn.''

It will be noted that after charging the jury that it was negligence not to give the warning as required by statute, the judge did state that if it was apparent that the violation had no influence in caus-

ing the accident, the jury need not consider it. He, however, immediately thereafter stated that plaintiff was not required to anticipate that defendant driver was going to violate the statute by turning north into Wabash avenue without giving the proper signal, and further that the bicyclist need not anticipate that a truck driver would fail to signal an intention to turn. He thus led the jury to believe that the failure to give the signal was negligence *per se,* and though some effort was made to modify his first remarks, he again emphasized them by his further statements. Defendant was entitled to the charge as requested in regard to the failure to give the signal, and if, as the record indicates, it was impossible for the boy to see the signal, then the testimony in this regard was immaterial. If the boy was alongside the truck, as he claims, when it made the turn, the giving of the signal would have been an idle gesture, and therefore, the driver's failure to give it was not the proximate cause of the accident.

The defendant was entitled to an instruction that, notwithstanding the driver's failure to comply with 1 Comp. Laws 1929, § 4711, such violation was not the proximate cause of the accident. The refusal of the lower court to properly charge the jury, as requested, constituted prejudicial error under the circumstances. *Lagassee* v. *Quick,* 273 Mich. 295; *Patt* v. *Dilley,* 273 Mich. 601; *Stahl* v. *Bell,* 276 Mich. 37.

As the case must go back for a new trial, we need not discuss whether the amount of the verdict was excessive or the other claims of error made by defendant. Those of any merit can be avoided on a new trial.

The judgment is reversed, with costs to defendant and a new trial ordered.

NORTH, C. J., and FEAD, WIEST, BUSHNELL, SHARPE and TOY, JJ., concurred. POTTER, J., did not sit.